IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JANET D. SPEAKMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 11-G-2697-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION

The plaintiff, Janet D. Speakman, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Disability benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)      whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Patrick R. Digby determined the plaintiff met the first two tests, but concluded that while she has an impairment or impairments considered "severe," her impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 20].   The ALJ found the plaintiff capable of performing her past relevant work as a clothing presser. [R. 25].

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively

determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  Foote at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

> When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the  Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the

Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

**DISCUSSION**

The plaintiff was 46 years old at her amended alleged onset date of May 1, 2006, and 50 years old at the time of ALJ Patrick R. Digby's decision.  The ALJ found that the plaintiff has the following severe impairments: fibromyalgia; chronic neck pain;

headaches; anxiety and depression; and possible seizures. [R. 17].  He found that the

plaintiff has the residual functional capacity to perform a less than full range of light

work.[1] [R. 21].  Accordingly, the ALJ found that the plaintiff could perform her past

relevant work as a clothing presser, and therefore, is not disabled. [R. 25-26].

The medical evidence of record shows that the plaintiff has been primarily

treated from April 2004 through October 2009 at the Good Samaritan Clinic, which

provides free medical care for uninsured low income individuals. [R. 203-244, 292-297,

and 320-349].  Diagnoses from the physicians at the clinic include chronic back pain,

fibromyalgia, headaches, GERD and irritable bowel syndrome, depression and anxiety.

Id.  Although the plaintiff has seen physicians at the clinic over her treatment history,

most treatment records are from Carol Livingston, a certified registered nurse practitioner

("CRNP").

In connection with the plaintiff's disability application, the Commissioner

sent her to Jack L. Bentley, Jr., Ph.D., for a mental status examination.  Dr. Bentley

---

[1]  Specifically, the ALJ found that:

she could occasionally lift 20 pounds and frequently lift/carry 10 pounds;
stand/walk/sit six hours out of an eight hour day; frequently climb, stoop,
kneel, crouch, and crawl; no work around ladders/ropes/scaffolds, extreme
cold, vibrations, fumes, odors, dust, gases, etc.;no work at unprotected
heights or hazardous machinery.  As for her ability to respond to mental
demands of work, she could understand short instructions but not detailed,
perform simple tasks for two hour periods, have casual contact with the
general public and have gradual changes in the work setting.

[R. 21].

reported that the plaintiff has a history of chronic pain syndrome due to fibromyalgia,

degenerative disk disease in her lumbar spine, irritable bowel syndrome with chronic

constipation, and an acid reflux disorder. [R. 246]. Dr. Bentley noted the plaintiff's

complaints:

> She began experiencing significant anxiety and depression in the early
> 1990s. The client took antidepressants which significantly improved her
> mood. Ms. Speakman again started suffering severe anxiety and depression
> approximately 18 months ago when her health began to deteriorate. She
> readily admitted that the pain and loss of lifestyle has been the substantial
> cause for her psychiatric difficulties. The claimant used to perform many
> household activities that she is now unable to complete in a timely manner.
> The client gets frustrated over her pain disorder. Ms. Speakman suffers
> persistent fatigue, moodiness, irritability and loss of self-esteem.
>
> The claimant has not received any formal psychiatric treatment. She is
> currently being medicated with Lexapro 20 mgs hs. Use of this
> antidepressant has not significantly altered her mood. The client needs to
> consult her physician again but does not have the financial resources to
> pursue these services.

Id. Dr. Bentley estimated, without the benefit of intelligence testing, that the plaintiff

falls in the upper end of the borderline range to the lower end of the low average range.

[R. 247]. His diagnostic impression was depressive disorder, not otherwise specified,

with anxiety, and drug dependence (nicotine). [R. 248]. As far as the reliability of his

examination, Dr. Bentley noted that the plaintiff "was reasonably motivated and

cooperative" with him, and that she had "become more despondent recently due to

continued pain disorder without receiving any benefit" from her drug regimen. [R. 248-

249].

8

On December 11, 2007, Amit V. Vora, M.D., performed a consultative physical examination at the behest of the Commissioner.  During the physical examination, straight leg raising[2] tests were positive at about 30 degrees on both sides. [R. 254].  An x-ray of the lumbosacral spine revealed that the intervertebral disc spaces looked normal, except for the disc space between L5 and S1, which Dr. Vora said "is definitely narrowed." [R. 255].  Dr. Vora's summarized his examination:

> Ms. Speakman, who is a 48 year-old white female, has chronic severe back pain.  She probably has a mild to moderate degree of degenerative disc disease involving the lumbar spine and is constant severe pain.  She also has overlapping pain with fibromyalgia syndrome also. [sic]  Besides she has a history of depression and anxiety as well as history of black out type of spells in the past.  The back movements are significantly restricted.  She is a chronic heavy smoker and has mild COPD.  She definitely looks older than her age.  She had multiple GYN surgeries including partial hysterectomy, removal of the ovaries, tubal ligation and has chronic pelvic pain probably secondary to adhesions.  She was advised not to lift over 15 pounds on account of her lower abdominal surgeries, [sic] however, she cannot even lift 10 pounds because of her back.  She has some restricted movements of both shoulders and the movements are somewhat painful.  This could be related to possible bursitis or fibromyalgia syndrome.

Id.

On September 29, 2009, CRNP Livingston completed a "Medical Opinion re: Ability to do Work-Related Activities (Physical)" questionnaire, in which she estimated that the plaintiff could lift and carry 10 pounds occasionally, and less than 10

---

[2]  A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (See Listing 1.00(B), ¶5)  The SLR test is also known as Lasègue's sign:  "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed.  This distinguishes the disorder from disease of the hip joint."  Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

pounds frequently, in an eight-hour day. [R. 342].  She thought the plaintiff could stand

and walk less than two hours, and sit for less than two hours, in an eight-hour day.  Id.

She thought that the plaintiff would need to lie down at unpredictable intervals during the

day. [R. 343].  CRNP Livingston noted that the plaintiff has multiple trigger points

consistent with fibromyalgia.  Id.  She identified the objective signs of positive SLR tests,

abnormal gait, tenderness and impaired sleep, and estimated that the plaintiff would be

absent from work more than four days a month because of her impairments. [R. 344].

CRNP Livingston thought that the plaintiff's pain was moderately severe to severe.  Id.

       The ALJ rejected the opinion of Dr. Vora, the Commissioner's own

consultative physical examiner, giving it little weight.  The ALJ stated, "Dr. Vora's

opinion is inconsistent with the other medical evidence in the file and appears based

predominately on accepting the claimant's statements as to her condition without

question." [R. 24].  This conclusion is not supported by substantial evidence.  Dr. Vora

conducted a thorough examination, including a musculoskeletal examination that resulted

in positive SLR testing, x-rays of the lumbar spine which showed a definite narrowing

between L5 and S1, and range of motion testing which was restricted and resulted in pain.

[R. 254-256].  Instead of being inconsistent with the medical evidence of record, Dr.

Vora's opinion is entirely consistent with the plaintiff's allegations of disabling pain.

       The ALJ also rejected the opinion of CRNP Livingston, giving it little

weight and citing similar reasons:

> There is no supporting evidence submitted.  The opinion is not only
> unsupported by the medical evidence of record but is also unsupported by
> her treatment of the claimant.  Ms. Livingston is a nurse practitioner and
> nurse practitioners are not considered acceptable medical sources by the
> agency.

[R. 25].  It is true that CRNPs are not acceptable medical sources for proving the claimant

has a severe impairment.  Once medical evidence establishes the presence of a severe

impairment, however, their testimony may be utilized to show how a claimant's

impairment affects her ability to work..  20 CFR § 404.1513(e).  The ALJ found that the

plaintiff's severe impairments included fibromyalgia. [R. 17].  Then, in rejecting the

CRNP's finding of multiple trigger points consistent with fibromyalgia, he held that

"there is no evidence that the claimant has been diagnosed with this condition by any

medical doctor." [R. 22].  However, a review of the treatment records from Good

Samaritan Health Clinic reveals that two medical doctors have diagnosed the plaintiff

with fibromyalgia. [R. 222, 223].  Based on these diagnoses, certainly this CRNP is

competent to testify about how the plaintiff's fibromyalgia affects her abilities.  It was

improper and unreasonable for the ALJ to reject CRNP Livingston's testimony.

At the hearing, the plaintiff testified that her back and shoulders hurt all the

time, evidenced by spasms. [R. 35].  Her pain is aggravated by activities of light

housework, such as sweeping or mopping. [R. 40].  She testified that she could do

housework for ten minutes at a time, but then she has to sit down to rest.  Id.  She has

headaches about three to four times a month which cause her to lie down in a dark

bedroom for one to two days. [R. 39].  The ALJ discounted the plaintiff's pain testimony:

11

> Although the claimant has described daily activities which are fairly
> limited, two factors weigh against considering these allegations to be strong
> evidence in favor of finding the claimant disabled.  First, allegedly limited
> daily activities cannot be objectively verified with any reasonable degree of
> certainty.  Secondly, even if the claimant's daily activities are truly as
> limited as alleged, it is difficult to attribute that degree of limitation to the
> claimant's medical condition, as opposed to other reasons, in view of the
> relatively weak medical evidence and other factors discussed in this
> decision.  Overall, the claimant's reported limited daily activities are
> considered to be outweighed by the other factors discussed in this decision.

[R. 25].  It is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true."  Hale, at 1012.

The ALJ's finding at Step 4 that the plaintiff is capable of performing her past relevant work as a clothing presser is not supported by substantial evidence.  At the hearing, the plaintiff's attorney questioned the vocational expert as to the job of clothing presser:

Q:   In response to the first hypothetical that the judge gave you, Patsy, you said that the clothing presser was in, was consistent with the limitations that the judge gave you. But because that was only one part of her past relevant work it would rule out all past relevant work, would it not, the restrictions that he gave?

A:   Well, it would as she performed it. Since that was sort of a composite job where two different DOT titles had to be identified to cover what she did as she performed it, it would be ruled out.

[R. 56-57].  However, the ALJ made an additional finding at Step 5 that there are other jobs in the national economy that the plaintiff is capable of performing. [R. 25, 26].  The VE was asked further about how the need to lie down at least one hour three to four days a week because of moderately severe to severe pain would affect a hypothetical individual's ability to work.  The VE testified that the need to lie down "would eliminate past work and all other work," and that the moderately severe to severe pain "would be distracting to performance of work." [R. 58-59].  Taking the plaintiff's testimony as true, the VE's testimony establishes disability without a doubt.

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 7 June 2012.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

13